Good morning, ladies and gentlemen. We have four cases on the calendar this morning. Government contract case from the board of contract appeals, a case from the district court, two government not argued. First case is the contract case, Secretary of the Army v. Tecom, Inc., 2008-1171. Ms. Kershner. Good morning. May it please the court, in Boeing, this court held that for costs to be allowable in a settlement situation, where the cost of an unsuccessful defense would be disallowed, the contractor must show that the allegations in the underlying lawsuit had very little likelihood of success on the merits. The government is requesting that that same standard be applied in determining the allowability of the contractor's litigation and settlement costs at issue in this case. Is there any limit to the type of private suits? I mean, what's the government's view? Is it private suits that allege a violation of law? Is that it? Is it Title VII suits because these folks are acting as private attorney generals? Or does it include a slip-and-fall case where somebody slips in front of the applies to the slip-and-fall case? What we are contending is that under FAR 31.204C, this litigation, this employment discrimination, is similar related to the litigation that is specifically dealt with in 31.205-47. That is, firstly, litigation that involves allegations of violation of law and regulation. But the problem, and it seems to me there are two separate issues here. One is how to treat the settlement. But let's assume for the moment we agree with you that if a judgment in the case would not be an allowable cost, okay? Let's assume that if a judgment would not be an allowable cost, the little likelihood of success is the right test for determining whether a settlement in such a suit would be an allowable cost. Okay, let's assume that you're correct about that. I think Judge Prost's question gets to the heart of this, and that is the first step is to determine which kinds of judgments, before we get to the settlement question, which kinds of judgments would be disallowed costs. And the problem is you seem to be arguing that any law violation would result in a judgment which wasn't an allowable cost, which seems to be a pretty broad proposition and perhaps in some sense to be inconsistent with the regulations because that seems to distinguish between private suits and government suits and to suggest that the disallowance of judgment costs in private suits is much more limited. You do have an alternative theory, as I understand it, which is that if the contractor violates the contract and has a judgment entered against it, that that's not an allowable cost, relying on earlier court claims case, I forget the name, Dale or something like that. But could you help us understand a little bit what contracts typically say about law violations? Let's suppose we were to adopt your alternative argument and to say that if the contractor violates the contract by engaging in some sort of contractually prohibited practice, that the judgment wouldn't be an allowable cost. How far would that go? Do you understand what I'm asking you about? Yes, I think you're raising at least two questions. I want to try to address both. First of all, this case is similar related to the costs that are dealt with in 31.205-47, not only because there are allegations of violation of law or regulation, but also because under But that's not the point. The contract also says you've got to comply with Title VII, right? Yes, yes it does. And your argument is if you don't comply with Title VII, you can't recover the costs of a judgment. So what I'm asking you, in a bit of a verbose way, is what else, if we agreed with you, that if the contractor violates the contract, you can't recover the judgment as an allowable cost under the contract. Let's assume we agree with that. How broad is that proposition? How broadly do government contracts prohibit the contractor from violating law? Is there a general provision in government contracts that says you can't, you must comply with all federal, state, and municipal laws and ordinances and rules? Or is it more limited than that? I think that's your second, the second thing you're pointing to. And that, the relevant case being the Court of Claims case and Day Brothers. Your question is about how broad the contracts go. How far does that principle carry us? Well, the contracts incorporate the Equal Opportunity Clause. They also incorporate anti-kickback clauses, clauses related to violation of the False Claims Act. Those types of federal laws are, there are specific provisions in federal contracts that essentially incorporate those federal laws as a matter of contract. But what we are contending here, you seem to There's no broad prohibition saying a contract has to comply with all applicable laws, regulations, et cetera. Yeah, I can't speak as to all contracts. I can certainly see that there might be a government lease in question where there might be a requirement that the contractor, where there is a lease of real property, that all laws, whether federal or state, be complied with with regard to the government construction contracts or incorporate the anti-fraud provisions, the anti-kickback provisions. In any event, Ms. Kirshner, this isn't a Boeing case, is it? There are all sorts of False Claim Act allegations in the Boeing case, and this is a simple private dispute that was settled involving employment. It's not Boeing. It is Boeing in the sense that in Boeing, this court stated that if the Citron shareholder derivative lawsuit had resulted in an adverse determination against the director defendants, the cost of that private litigation would not have been allowable. But there was no adverse determination here. There was a settlement. Yes, that's correct. But the court's rationale is based on its understanding that had the Citron lawsuit resulted in an adverse determination against the director defendants, the cost of that lawsuit would not have been allowable costs. That's because the Citron case involved misconduct vis-a-vis the government. What was alleged in the complaint against the director defendants was that they had breached their fiduciary duty, that they had knowingly, recklessly, culpably breached their duty to establish internal controls. There was no allegation that the director defendants in the Citron lawsuit violated federal law. In a sense, the case here, the employment discrimination case here, is much closer to the lawsuits encompassed by 31.205-47 because you have an allegation of violation of federal law by the defendant in the lawsuit. You did not even have that in the shareholder derivative lawsuit at issue in the Boeing case. Rather, this court said that if that lawsuit had resulted in an adverse decision against the director defendants, those costs would have been allowable. Then the court said, but what we have here is a settlement situation. The court said that we reject the assertion by Boeing that only those litigation costs incurred in a frivolous defense should be disallowed. Rather, we look to the regulation for the reasonable cost principle to be applied in a settlement situation. The reasonable cost principle that the court pointed to was found in 31.205-47-C2, which specifically deals with the settlement of private litigation. As this court pointed out in its decision- Under the False Claims Act. Yes. That is the regulation for False to a private lawsuit where the director defendants were not alleged to have engaged in submitting false claims. What they were alleged to have done is fail to institute adequate internal controls. Whatever happened in the Boeing case, was it ultimately adjudicated? The Boeing case was returned to the board pursuant to the court's decision and then was settled. A settlement was entered into between Boeing and the government. Let me ask you, everybody concedes that there's a policy element to this and a policy decision. On the settlement question, here it's evident the amount versus what had already been devoted, the amount already devoted to legal fees at even this early stage was twice as much as the amount initially settled. For a contracting officer who's presumably not necessarily an attorney to evaluate whether there's little likelihood of success on the merits, it's just unclear to me how as a practical matter that operates. You have no control over the private party plaintiff, so they don't need to cooperate. Presumably that analysis is done what on the papers, just on the filings that have been made. In cases like sexual harassment as we have here, typically rise or fall based purely on credibility determinations. In those instances, how does a contracting officer make that evaluation? The contracting officer makes that evaluation based on the information presented to him by the contractor. The contractor would present its information as to why it believes its employment decision. The contractor would, in the first instance, present that information to the contracting officer. Under the regulation, the contracting officer would consider it with the assistance of legal counsel. The contractor comes in and says, my supervisor says it's an issue of sexual harassment and my supervisor claims this never happened and we believe him. It's possible that the contracting officer, if that is all he has, may decide that the contractor has met its burden. What we are contending is that there is a burden on the contractor to come in with evidence demonstrating that the plaintiff has very little likelihood of success on the merits of its suit. That evidence would be presented first to the contracting officer. But you say that it's possible that the contracting officer might say that's sufficient. We don't know that at all, right? It's quite equally possible or plausible that the contracting officer will say that's not enough to show little likelihood of success on the merits because I haven't seen either of the witnesses testify and it's just as likely that the jury might believe the victim here as opposed to the alleged perpetrator. It's certainly possible that the contracting officer would, for all sorts of reasons, deny the claim. And that claim would then be presented to the board and it would be up to the board to rule on the preponderance of the evidence whether the contractor has met its burden of demonstrating that the plaintiff's lawsuit had very little likelihood of success on the merits. That would most likely be based on a hearing before the board where the contractor presented its evidence as to why that lawsuit had very little likelihood of success on the merits. A hearing that included the testimony of witnesses? Certainly it could be a testimony from the contractor's attorneys as to their evaluation of the lawsuit and why that lawsuit had no likelihood of success on the merits or very little likelihood of success on the merits. That evidence would be presented to the board and the board on the preponderance of the evidence, which is the standard for board proceedings, would make a decision as to whether the contractor had met its burden. And what we are contending that this is the appropriate standard to be applied where you have a settlement which is an alternative in the case of, it could be a meritorious case where there could have been a judgment against the corporation that it had engaged in sexual harassment and retaliation against its employees. So where a contractor as an alternative settles a meritorious lawsuit, then certainly it should have this burden of coming forward with trying to demonstrate that there is very little likelihood of success on the merits. And if it doesn't make that demonstration, then the costs are not allowable under the regulation. Ms. Kirshner, your time is about to expire. Why don't we hear from Mr. Bailey and we'll give you your rebuttal time back. May it please the court. My name is Jonathan Bailey. I'm counsel for Tech-On Inc. here in this case. At the outset, this is not a Boeing case. Well, suppose, let me see if I can understand your position. Suppose there had been a Title 7 judgment here. Would that be an allowable cost? A Title 7 judgment? Yeah. No, Your Honor. It would not be allowable cost. I believe the case law is clear on that already. Okay. So then it seems to me our problem is to figure out if the judgment wouldn't be an allowable cost, what to do about settlements. And why doesn't Boeing tell us that in general, if a judgment wouldn't be an allowable cost, you use this little likelihood of success standard to determine whether a settlement would be an allowable cost? Yes, Your Honor. It's precisely because the likelihood of success in the merits language exists in only one place in the FAR, and that's in 47C2. And the language of 47C2 very clearly limits its application to only settlements in Quitom cases. Well, but Boeing wasn't a Quitom case either, and yet we use that standard to determine how to treat settlements. Yes, Your Honor. And the government and I agree on one thing, and that is FAR 31204 allows principles to be applied to similar cases. Boeing was a similar case to a Quitom case. Now, the government in its discussion of the Citroen lawsuit that was underlying Boeing drills down to a certain level and then stops. They say it was about fiduciary duty. Well, what was the result of the breach of the fiduciary duty? The contractor was found guilty of submission of false claims and fraud in violation of the Clean Water Act. That was the underlying case. That was what drove those shareholders to sue their management, is because the management had failed to prevent fraud and false claims. That is why Boeing found that the likelihood of success test should apply to those costs. The same with Caldera. We didn't limit the likelihood of success test to settlements involving Quitom action. Well, frankly, Your Honor, the plain language of the FAR doesn't allow the court to extend it beyond that, because that's the only place it exists. You might make that argument, but that was rejected in Boeing. Clearly, Boeing was not a situation in which we were within the narrow scope of that particular provision. We used the similar or related language to apply that same standard elsewhere. Right, Your Honor, but there has to be some factual nexus to be similar or related. A breach of contract with a sub or supplier is not similar or related. There has to be some element of that underlying lawsuit that is somehow similar to a Quitom or related to a Quitom. How about discrimination when the contract provides that there shall be no discrimination? Well, the contract provides, if we're going to go down that road, then almost any legal proceeding that a contractor is involved in, if you want to take the broadest interpretation of the contract, is a breach of the contract. Why is that true? If my client fails to pay a supplier, he's breached the payment provisions. If he fails to pay a subcontractor or is in a dispute with a subcontractor, he's breached the payment provisions. If somebody slips and falls on the base, he's breached the safety provisions. You can stretch the contract to cover every activity, well, because the contractor is only on the facility because of the contract. Therefore, everything he does on that facility is somehow related to the contract. Well, except you could limit it, as Dade seems to do, to situations where the contract says you must comply with this provision of law. If the contract singles out that particular provision of law and you violate it, why isn't that a kind of a special situation? Well, Your Honor, there's the Permanent Responsibilities Clause that's in every contract which requires contractors to comply with all federal, state, and local laws and regulations. So, I mean, again, you're back to the universal clauses. Which provision is that? The Permits and Responsibilities Clause. It's a standard FAR clause that's required in every contract. What's the number? You'd have to ask me, Your Honor. Off the top of my head, I don't know. I can't pull it up. But what is the essence of that? It just blanketly says the contractor shall comply with all provisions of federal, state, and local regulations. Usually, it comes into play where a contractor has failed to get some kind of permit that's required by a local licensing body or something like that. But if you want to stretch, I mean, yeah, you can stretch anything, any lawsuit. Well, let me ask you... And then the exception swallows the entire process. Let me ask you, you said at the beginning when I questioned you that if there had been a judgment here, it wouldn't have been recoverable as an allowable cost, right? Right. And why is that, in your view? Actually, Your Honor, I need to amend that. I'm thinking back through 31205-47, the various, which allows legal expenses. And a contractor will not be incurring legal expenses unless they're involved in a lawsuit of some kind. And actually, I can't think of a specific provision in 47. I shouldn't have answered so quickly. I can't think of a provision in 47 that disallows specifically those costs. So now your position is that an adverse Title VII judgment would be an allowable cost? Because I had the same knee-jerk reaction, that same instinctive reaction that I know is inevitable. This is a sexual harassment case. And you know what? I think that part of the reason why this is so contentious, this case, is because it's sexual harassment. The idea of sexual harassment is distasteful. And it immediately implies that someone has done something very, very wrong. That's not necessarily the case. And that doesn't change the cost principles just because we don't like sexual harassment. But it is the case that you're, I mean, Judge Dyke's hypothetical involves legal determination that there was either sexual harassment or some sort of discrimination or retaliation. So why would the taxpayers and the government foot the bill for a judgment against a contractor in that regard? Well, of course, the hypothetical is not our case. And the hypothetical, and actually I'll go back to it again, 3120547B, which the government relies on. That's the one that they say would disallow the judgment. What that says is it disallows the legal expenses that are related to a case where either a civil action or an administrative action or a monetary penalty could be imposed. And that's where we get to the real heart of this case and the heart of the Southwest Marine case. But doesn't that go to the fact that you were probably right in your first answer to Judge Dyke because there's potential for a monetary remedy in this case, right? Yes, Your Honor, but no, it's not. Here's a reason. 47 has a very specific definition of what a penalty is. And it specifically excludes all forms of actual compensation. All forms of actual damage are excluded from the definition of a penalty. The same is true in the Ingalls Shipbuilding case. There the contractor was found to have violated the Longshoremen and Harbor Workers' Compensation Act. He had to pay a penalty. He had to reimburse – well, it wasn't a penalty. He had to pay monies to reimburse those workers for payments he hadn't made. And this court looked at those payments. They were violations of that act. The court looked at those payments, came up with a three-part definition of what constitutes a fine or penalty that is not allowable, and said that those payments were allowable. That was this court. But the Supreme Court in the Federal Power Commission case has singled out Title VII, and that case comes pretty close, although it was a rate-making proceeding, pretty close to telling us that the judgment wouldn't be an allowable cost, doesn't it? I mean, none of the policies that motivated the Supreme Court in the Federal Power Commission case really apply here, too? Well, again, definitely. I've already acknowledged that these are emotionally-charged cases, and that Title VII has a lot of emotional attachment. I don't think the Supreme Court was making a decision based on an emotionally-charged criteria. It is given a special place. And perhaps it should be that the promulgators of the FAR should amend Part No. 47 and add special treatment for Title VII. They have not done so. They have added very specific treatment, special treatment, for false claims against the government, because there is nothing more inimical to performing a contract for the government than defrauding it. That is why it was singled out. That's why those cases and those types of cases were singled out. Let's assume we conclude that we agree with your first statement and not your second. In other words, a judicial determination of What sense does it make that those costs would not be allowable, but if the contractor is clearly guilty, he realizes that, and he settles a case and spends $500,000 in attorney's fees and settles it for $200,000, that should be allowable? I mean, what kind of policy sense does that make to differentiate between those two in an instance where the contractor was clearly guilty? Well, it makes, what kind of policy sense does it make? It makes a lot of policy sense, and Your Honor touched on it in questioning the appellant. What's the alternative? Is the CO going to interview every witness with counsel there? Is the CO going to, because sexual harassment cases are not document cases. These are credibility determinations. Yeah, but isn't it, my understanding of these Title VII cases, and I may not be as familiar with them as you are, is that it is pretty standard that a company, when it is caught with its hand in the cookie jar and it's clearly guilty, settles the case. They don't go to judgment. So by saying that if you settle, you don't have to worry about it, you're basically saying that every really bad case is going to result in an allowable cost. No, not every case, because it never makes business sense for a contractor to try a Title VII case. If you don't get some re-judgment, you're looking at hundreds of thousands of dollars in legal fees. Isn't it true that almost all cases in which the employer is clearly liable get settled? I would say that almost all cases in which the employer is even charged get settled. Most don't make it past the EEOC stage, they get settled there because the contractor is always better off paying some money, putting it behind him, and moving on with performance. Why? For very good reasons that benefit the government. Number one, the disruption to the workforce. If there's this ongoing fight between one employee and the company, what does that do to the morale, not only of his own workers, but of the government people that they deal with every day? Well, your other argument is, are the numbers here, which is, if it's clear that the company would have incurred half a million dollars of legal expenses in this case, and they could settle the case for anything less than that, then it makes economic sense, guilty or not guilty for the government, for the company to settle, right? And here it did. It's recited in the factual findings of the board that, I wasn't the counsel on the sexual harassment case, but we put on evidence that firm estimates were given to my client that it would cost $100,000 to $150,000 to take the case to trial. So the $150,000 settlement to the plaintiff was a savings of $50,000 to $100,000. That makes a lot of business sense, and it gets the problem over with. You can move on with performing your contract. Certainly, if contractors were not performing this work, the government would, and it would be the government defending itself from sexual harassment cases, and certainly the taxpayer would have to pay for that, including the settlement, and in that case, including the the government. Part of that work is defending itself. Wait, wait, wait. I'm sorry. Your position then is that every settlement cost is allowable, no matter how bad the conduct, no matter how clear it was that the employer had violated Title VII? I would say a qualified yes, for two reasons. Number one, the FAR makes a very specific distinction in treatment of one category of settlements, False Claims Act settlements, and not any other. Number two, the expense, not only to contractors, but to the government, and the policy issues, the expense and inefficiency that would be involved in going down that road is immense. It would undo any benefit of engaging that analysis. You started off saying this isn't a Boeing case, and then a series of questions ensued. Finish your thought on Boeing. On Boeing, I think I expected we had a dialogue about that. Maybe it's in the eye of the beholder, but when I look at that case, I see that the Federal Circuit recited very specifically, was very interested in what the allegations made by those shareholders were, recited them, called them out in the decision. In page space, sometimes, I don't think that this court recites factual background for no purpose. They did, and of the four allegations, three were fraud or false claims. The other one was Clean Water Act, which Southwest Marine tells us is not allowable as well. So it made very good sense that the Boeing... The Clean Water Act? Yeah, one of them was Clean Water Act. I don't saw that case. I think you're confused with the Marine case from the Ninth Circuit, right? I may be, but I know that the other factual recitations were all related to false claims and fraud. That's why the shareholders were upset. No, no, but the focus of the case was on the fifth issue. We treated the first four on a footnote because they were so clear. The whole discussion was about the Chiron case, about the suit against the directors for breach of duty. That's what I'm talking about. Which wasn't something which was covered at all under the FAR, and we had to look to the similar related test. No, Your Honor, that's what I'm talking about. The Chiron lawsuit, the suit against the directors was brought by the shareholders because the directors did not prevent fraud and false claims. That was why the Chiron suit was brought. That is why, I don't know, I'm not necessarily sure that it was in this panel, that's why this court found it was. And it was the kind of suit that wasn't specifically covered by the regulations, right? Right, and obviously the promulgators of the cost regulations in 31-204 recognized that it's not possible for them to address every single possible element of cost. The cost regulations are complex enough as they are. My argument is that the facts of the Boeing case, and if you want to reach even further back, the Caldera case also involved fraud against the government, tangentially. Didn't Boeing involve a suit brought by a third party under the False Names Act? Yes, it did, Your Honor. It was a subsidiary suit brought by the shareholders against the managers because of a third party suit, a key time suit that was brought against them. In other words, the regulation applied to the Boeing case? Yes, it did, Your Honor. No. By 31-204. That's not true. Under the similar related provision. Yes, but there wasn't any specific provision of the regulation. Oh, no, Your Honor. No, I didn't mean to represent that to be the case. This is the Southwest Marine case. This is the Ingalls Shipbuilding case. The only inquiry that this case court needs to engage in is whether a Title VII case, whether the damages that are assessed under a Title VII case qualify as a fine or a penalty. Either under Section 47 or Section 15, they do not. The three-part inquiry in Ingalls Shipbuilding tells you that they do not. The three parts are, number one, that the amount is not related to any actual damages. Not the case in a Title VII case. That the money goes into the public treasury, not to the private litigant. Not the case in a Title VII case. And number three, that it vindicate a private harm, not a public harm. Title VII cases vindicate private harms. The government argued that there was public interest in that vindication, but there's public interest in a breach of contract suit. A breach of contract suit protects the sanctity of contracts. Without that, capitalism falls apart. So yes, there's a public interest there, but we wouldn't argue that the damages assessed in a breach of contract suit were a fine or penalty under this clause. They're clearly not. It's a simple case. All this court has to decide is whether Title VII imposes fines or penalties. All the court has to do is follow Southwest Marine, follow Ingalls Shipbuilding, and resolve the case. Thank you, Mr. Bailey. Thank you, Your Honor. The questioner will hear if you have any rebuttal. Not new issues, but just rebuttal. May it please the court, I'd like to address three questions. First of all, the court asked whether if this case, if the employment discrimination case, had resulted in an adverse decision against the company, whether those costs would be unallowable. And yes, the costs would be unallowable, and the court asked, well, why? First of all, there are specific provisions that deal with back pay itself. Under the FAR, back pay is an unallowable cost. So if the case had proceeded to judgment and an award of back pay, back pay would have been an allowable cost. Then we also point to 31.205-47, which deals with the cost of litigation against the, litigation which involves violations of federal law. That is, the litigation of an employment discrimination suit is most like the litigation encompassed by 31.205-47. For several reasons, as we've set out, that involves violations of federal law. And secondly, that it can result in the imposition of punitive damages. And punitive damages are civil penalties. I have not heard anything from TCOM's counsel that denies our assertion that punitive damages are civil penalties. And in fact, the Supreme Court has so stated. So this case is like Southwest Marine. It is a litigation where there can be the imposition of a civil penalty. It involves violations of federal law, and the litigation could have been brought by the federal government. Title VII lawsuits can be brought either by private plaintiffs or by the federal government. So we think that this case is very, very, very analogous to the Southwest Marine case. We have the decision from the Ninth Circuit. What about this reference to the permits and responsibilities clause? Yes, I wanted to address that. I don't have the site for the clause, but we can, I know it's in countless decisions. Help me understand what it says. I can't quote it exactly for you, but it's my understanding that that clause requires the government contractor, for example, for a construction contract. The government contractor would have to go out and get any necessary permits. It would have to comply with any state or federal laws that affected carrying out of the contract. For example, if there was asbestos involved, you would have to comply with any regulations for asbestos, be they federal or state regulations. If there were permits you needed to dump hazardous material, you've got to get those permits from the state or from the feds. You have to comply with the laws that relate to your carrying out of the contract. Would that cover a Title VII violation? Well, Title VII is specifically... No, no, no, I understand that. Yes. Suppose there were no specific provision dealing with Title VII. Would the permits and responsibilities clause mandate compliance with Title VII? I'm not sure it's that broad, Your Honor. I have to go look at the exact language of the clause. I'm sorry, I don't have that clause with me today. But certainly the equal opportunity clause requires that the contractor comply with Title VII. Accordingly, what the Board is faced with and what this Court is faced with is determining the appropriate cost principle to be applied when there is a settlement of a lawsuit involving allegations of violation of federal law. It could have resulted in punitive damages. And the appropriate standard when you have a settlement, which avoids a judgment, is the standard that the Court adopted in Boeing, the very little likelihood of success on the merit standard. And that is a reasonable cost principle to be considered. Thank you. Ms. Kershner will take the case under advisement.